UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BROOKHAVEN TOWN CONSERVATIVE COMMITTEE,

                                  Plaintiff

    -against-

EDWARD M. WALSH, JR. and SUFFOLK COUNTY
COMMITTEE OF THE CONSERVATIVE PARTY OF
NEW YORK STATE,

                                  Defendants.
----------------------------------------------------------------X

14 CV
CV-14 6097
_COMPLAINT_

_JURY TRIAL DEMANDED_

BIANCO, J.

LINDSAY, M

      Plaintiff BROOKHAVEN TOWN CONSERVATIVE COMMITEEE, as and for its complaint against the Defendants, EDWARD M. WALSH, JR. and SUFFOLK COUNTY COMMITTEE OF THE CONSERVATIVE PARTY OF NEW YORK STATE, respectfully alleges as follows:

### THE PARTIES

      1.    Plaintiff BROOKHAVEN TOWN CONSERVATIVE COMMITTEE ("BTCC"), was and is the governing body of the Town of Brookhaven Conservative Committee with a mailing address of P.O. Box 1316, Medford, County of Suffolk, State of New York 11763. The BTCC is a legal entity formed under New York State Election law.

      2.    Defendant EDWARD M. WALSH, JR., upon information and belief and at all times relevant hereto, was and is the Chairman of the SUFFOLK COUNTY COMMITTEE OF THE CONSERVATIVE PARTY OF NEW YORK STATE ("SCCCP"), a member of the EXECUTIVE COMMITTEE of the SCCCP, and individual residing at 211 Apex Lane, East Islip, County of Suffolk, State of New York, 11730.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 17 2014 ★

LONG ISLAND OFFICE

1

3. Defendant SCCCP, upon information and belief and at all times relevant hereto, was and is the governing body of the Suffolk County Committee of the Conservative Party of New York State with a mailing address of care of Defendant EDWARD M. WALSH, JR., at 211 Apex Lane, East Islip, County of Suffolk, State of New York, 11730. The SCCCP is a legal entity formed under New York State Election law.

## *JURISDICTION and VENUE*

4. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "3" as if fully set forth herein.

5. This action is brought under the Federal Racketeer Influenced and Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961 et seq., and New York State Election law Section 6-120. Jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331.

6. Because claims brought under New York law are so related to Plaintiff's federal question claims over which the Court has original jurisdiction, they form part of the same case or controversy under Article III of the United States Constitution, giving this Court jurisdiction pursuant to 28 U.S.C. § 1367.

7. A substantial part of the events and omissions giving rise to the claims stated herein occurred in this District and all Defendants are subject to the personal jurisdiction of this judicial district. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 and to 18 U.S.C. § 1965(b).

## *FACTUAL BACKGROUND*

8. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "7" as if fully set forth herein.

9. Plaintiff was organized to engage in the business of conducting a local political committee for purposes of promoting, screening and nominating local candidates with conservative values within the Town of Brookhaven to represent, advocate, and support the local needs of the community and to legally raise money to support such candidates.

10. For Plaintiff to be able to raise such funds, it is axiomatic and critical that Plaintiff have the right and authority to issue and vote on the Wilson-Pakula authorization so that those supporting the ideals of the Conservative Party recognize that said committee has the actual legal right to authorize and nominate such candidates for local office.

11. *"Wilson-Pakula"* is an authorization given by a political party to a candidate for public office in the State of New York which allows a candidate not registered with that party to run as its candidate in a given election. The name is derived from the Wilson Pakula Act of 1947, authored by state senator Irwin Pakula and assemblyman Malcolm Wilson, and codified in New York State Election Law § 6-120, which forbids candidates from receiving the nomination of a political party if they are not registered as a member of that party, unless they receive permission to enter the primary from party officials representing a majority of the vote in the jurisdiction.

12. The BTCC has the largest number of registered Conservative Party members in Suffolk County and has, by far, the largest number of Conservative Party registrants in any town in the State of New York.

13. Article 5 of the rules, regulations and by-laws of the SCCCP provide that the County Executive Committee members are empowered to authorize, designate, and nominate a candidate for public office and for all purposes herein, acts as the representative, agent for and on behalf of the SCCCP.

14. Through the SCCCP, Defendant WALSH has engaged in a systematic and continuous course of conduct designed to intimidate and coerce the BTCC into acceding to his exclusive control and dominion over the BTCC's fundraising and candidate nomination process. Pursuant to his coercive pattern of behavior, Defendant WALSH has explicitly and implicitly threatened that, unless the BTCC abides by his arbitrary decisions as to which candidates will appear on the Brookhaven Township ballot as Conservative Party Candidates, he will terminate the BTCC's Wilson-Pakula authority and, correspondingly, disable the BTCC's ability to raise funds for its political purposes.

15. If the BTCC does not have Wilson-Pakula authority, not only will it lose its ability to raise funds, but the loss of such authority will benefit the SCCCP in that anyone wanting to donate to the Conservative Party, with the hopes of benefiting candidates in Brookhaven Township, will necessarily be compelled to donate to the SCCCP, which has Wilson-Pakula authority, as opposed to the BTCC, which has been wrongfully denied its Wilson-Pakula authority.

16. Defendant WALSH course of conduct is wrongful in that it violates state law New York State Penal Law 135.60 and violates various federal statutes, including but not limited to 18 U.S.C. § 1951 (Hobbs Act), 18 U.S.C. § 1341 (Mail Fraud) and 18 U.S.C. § 1343 (Wire Fraud).

17. Defendant WALSH's purposes, among others, are to increase his political clout in Suffolk County by absolutely and exclusively controlling the affairs of the BTCC (and similar committees within the county) and by increasing donations and contributions to the SCCCP.

<u>*COUNT ONE*</u>
(18 U.S.C. § 1962(c))

18. Plaintiff repeats, reiterates and realleges each and every allegation set forth in

paragraphs "1" through "17" as if fully set forth herein.

19. SCCCP is an enterprise within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that it is a "legal entity."

20. In the alternative to paragraph 19, the Executive Committee of the SCCCP constitute an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that the members of the Executive Committee of the SCCCP are "a group of individuals associated in fact."

    i. The members of Executive Committee of the SCCCP share the common purpose of (among other things) advancing the political agenda of the SCCCP, as set by its Chairman Defendant WALSH.

    ii. The members Executive Committee of the SCCCP are related in that they are members of the SCCCP on have been elected to its executive committee.

    iii. The Executive Committee of the SCCCP has sufficient longevity for the members to carry out their purpose(s) in that the enterprise has existed for decades and has been under the chairmanship of Defendant WALSH throughout all times relevant to this complaint.

21. Defendant WALSH is a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the enterprises described in paragraphs 19 and 20 through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity was perpetrated against Plaintiff and consisted of, but was not limited to, the following acts of 18 U.S.C. §§ 1951, 1341 and 1343:

### *Acts of in Violation of 18 U.S.C. § 1951*

a.  Defendant WALSH obstructed, delayed, or affected commerce and/or the movement of any article or commodity in commerce, by extortion or robbery or attempted or conspired to do so in violation of 18 U.S.C. § 1951.

b.  Defendant WALSH obtained or attempted to obtain money and property from the BTCC, with its consent, induced by wrongful use of actual or threatened fear.

c.  Defendant WALSH unlawfully took or obtained the property of the BTCC, in the presence of another, against its will, by means of actual or threatened fear of injury, immediate or future, to the BTCC's property, or to property in its custody or possession.

d.  In particular, Defendant WALSH, explicitly and implicitly, repeatedly and continuously wrongfully threatened to terminate the BTCC's Wilson-Pakula authority unless the BTCC abided by Defendant WALSH's authority and conceded to the candidates he nominated for office in Suffolk County. Defendant WALSH's threats were coupled with the knowledge and purpose to deprive the BTCC of political donations and contributions, given that it would receive no or greatly reduced political donations and contributions without Wilson-Pakula authority, and donors and contributors would redirect their financial support to the SCCCP. In particular, Defendant WALSH engaged in the following acts of extortion, among others:

e.  Beginning on or about February 9, 2010 and continuing to the present, Defendant WALSH explicitly and/or implicitly threatened that if the BTCC raised monies from any source he deemed inappropriate and/or at a time and place not authorized by him, then he could take the Wilson-Pakula authority away from the BTCC. Such action is wrongful pursuant to the SCCCP's by-laws and regulations. In response to Defendant WALSH's wrongful threats, the BTCC raised money only from sources and at times that he deemed appropriate.

6

  f. On or about February 9, 2010, Frank Profeta, Co-Chairman of the Executive Committee of the BTCC, confronted Defendant WALSH and indicated that the BTCC wanted to screen the County Legislative Candidates whose jurisdiction was solely in Brookhaven Town. Defendant WALSH expressly threatened Frank Profeta that if he requested said screening again he could pull the Wilson-Pakula Authority from the BTCC. In response to Defendant WALSH's wrongful threats, the BTCC did not screen the County Legislative Candidates.

  g. Between February 9, 2010 and up through September, 2014 (at a minimum), Frank Profeta attempted to schedule local Town Conservative Party fundraisers on behalf of BTCC. Upon learning of the planned fundraisers, Defendant WALSH demanded that the times and dates be cleared with him and would repeatedly direct the BTCC not to hold same because that would economically interfere with an SCCCP fundraiser. Nothing in the SCCCP's by-laws or regulations gives its chairman any authority with regard to scheduling the fundraisers or meetings of the local committees. When Frank Profeta protested, Defendant WALSH expressly stated that "this is a top down organization". This statement was related by Frank Profeta to the BTCC. This statement caused the BTCC to follow defendant WALSH's directives, limit its autonomy, and did not hold its fund raisers for reasonable fear that Defendant WALSH would terminate its Wilson-Pakula authority and destroy the BTCC's fund-raising capacity to the benefit of the SCCCP. In response to Defendant WALSH's wrongful threats, the BTCC cleared fund-raising dates with Defendant WALSH and cancelled other dates.

  h. In the Spring of 2014, Frank Profeta objected to Defendant WALSH having "chosen" his own, hand-picked friend to run for the vacated New York State Senatorial seat of Lee Zeldin without ever screening any other candidates. This 3rd Senatorial District is comprised largely in Brookhaven Town. In response to Frank Profeta's objection, Defendant WALSH

7

stated that despite there being no screening by the Executive committee of the SCCCP or its members Senft was the candidate and everyone better get in line." Defendant WALSH's statement that the BTCC everyone better get in line was an implicit threat that unless the BTCC got in line, Defendant WALSH would terminate the BTCC's Wilson-Pakula authority and thus destroy its fund-raising capacity to the benefit of the SCCCP.  Article 5 of the Rules and Regulations of the SCCCP provides that the executive committee is empowered to, <u>inter alia</u>, authorize the designation of candidates for Public Office in Suffolk County. Implicit in this Fiduciary duty is the responsibility to screen and vet those candidates. Walsh by dictatorial edict refused screenings for said public office.  In response to Defendant WALSH's wrongful threats, the SCCCP did not screen other candidates or further challenge Senft's endorsement.

    i.    In or around September 2014, Frank Profeta again met with Defendant WALSH and complained that there were no screenings for all of the offices for New York State Senate and Assembly. In response, Defendant WALSH expressly stated that "other members of the Suffolk County Executive Committee were upset with the Brookhaven Town Executive committee", and Brookhaven could have a problem with the Wilson-Pakula. Defendant WALSH's statement constituted another wrongful threat to the BTCC's Wilson-Pakula authority and its fund-raising ability. The SCCC Executive Committee is both entitled to screen candidates and has a Fiduciary responsibility to do so under Article 5 of the Rules and Regulations of the SCCCP.  In response to Defendant WALSH's wrongful threats, the SCCCP and its members from Brookhaven Town did not screen candidates.

    j.    On or about September 16, 2014, a re-organizational meeting was held for the SCCCP. Defendant WALSH was re-elected as Chairman of the SCCCP.  Thereafter, Defendant WALSH noticed a meeting for purposes of determining which organized towns in Suffolk County

would be granted or denied local "Wilson-Pakula" authority. Before and after scheduling said meeting, Defendant WALSH spoke to and colluded with most of the members of the Suffolk County EXECUTIVE COMMITTEE, except those from Brookhaven Town, of the SCCCP through face to face meetings, telephone phone calls, and electronic messages. Defendant WALSH directed each and every member of the SCCCP Executive Committee that they were to vote to deny the BTCC its Wilson-Pakula authority.

k.  As a result of Defendant WALSH's directive, the SCCCP Executive Committee denied the BTCC its Wilson-Pakula authority on or about October 8, 2014. The SCCCP Executive Committee's action, at the direction of Defendant WALSH, was the culmination of Defendant WALSH's threats to deny the BTCC's Wilson-Pakula authority if it continued to assert its autonomy and authority to select or screen its own candidates and raise monies to support its candidates without his authorization.

*Acts in Violation of 18 U.S.C. §§ 1341, 1343*

l.  As set forth above, Defendant WALSH engaged in a scheme to unlawfully deprive the BTCC of financial donations and contributions and to divert those resources to the SCCCP. Accordingly, Defendant WALSH knowingly devised or knowingly participated in a scheme or artifice to defraud the BTCC or to obtain the money or property of the BTCC by means of false or fraudulent pretenses, representations, or promises.

m.  Defendant WALSH could foresee that the U.S. Postal Service and interstate wires would be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343.

n.  In particular, Defendant WALSH knew or could foresee that the U.S. Postal Service and interstate wires would be used to receive and/or deliver, *inter alia*, communications between

9

Defendant WALSH and Frank Profeta for the purpose of coercing or fraudulently inducing the BTCC to abandon its autonomy and accede to the directives of Defendant WALSH; communications between Defendant WALSH and other members of the SCCCP for the purpose of fraudulently representing Defendant WALSH's authority and motivation for denying the BTCC its Wilson-Pakula authority; and communications among members of the BTCC Executive Committee that Defendant WALSH intercepted without authorization and by reason of his failure to disclose his presence on the telephone.

      o.    Defendant WALSH acting singly, and in concert with his agents, used the U.S. Postal Service and interstate wires or caused the U.S. Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud Foster, within the meaning of 18 U.S.C. §§ 1341 and 1343.

      p.    It is not possible for the BTCC to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed the scheme because the particulars of many such communications are within the exclusive control and within the exclusive knowledge of Defendant WALSH and other presently unknown individuals.

      q.    By way of example, however, Defendant WALSH engaged in the following specific acts of mail and wire fraud, among others:

           i.    Defendant WALSH utilized the U.S. Postal Service to unlawfully strip the BTCC of its Wilson-Pakula authority by mailing a voting proxy preprinted with Defendant WALSH's name on it so that he could use the vote to unlawfully deny Plaintiff its Wilson-Pakula authority and to use the designation of the Wilson-Pakula authority to further advance the goals of his corrupt enterprise. Section 6(b) of the SCCCP rules and regulations provide that said written proxy can be given by any member to the chairman of the County Committee or County Executive

10

Committee, First Vice-Chairman of the County Committee/County Executive Committee or to any Vice-Chairman at large. By preprinting the proxy the defendant Edward M. Walsh, Jr. failed to give each member the opportunity to give their proxy to someone else other than himself and evidenced the pre-ordained unlawful denial of Wilson-Pakula Authority by him and the SCCCP Executive Committee as representative and agent for the SCCCP.

    ii.    On or about August 25, 2014, Defendant WALSH, surreptitiously entered into and listened to a private, invitation-only telephone conference by and between members of the Executive Committee of the BTCC. Defendant WALSH's eavesdropping furthered his scheme to defraud by enabling him to gather information that he used to undermine and weaken the BTCC and its members through coercion and intimidation and to unlawfully strip the BTCC of its lawful right to select, screen and fund raise for its candidates. This meeting was a private meeting of the Brookhaven Town Executive Committee in which numerous issues were discussed including the defendant Edward M. Walsh, Jr.'s continuing refusal to allow lawful screenings of candidates along with discussions on how to address the defendant Edward M. Walsh, Jr.'s continued inappropriate behavior and actions.

    iii.    On or about October 8, 2014, Defendant WALSH voted the proxies (which he solicited through the use of the U.S. Postal Service), which resulted in the denial of the BTCC's Wilson-Pakula authority.

    r.    Each and every use of the U.S. Postal Service or interstate wires described above was committed by Defendant WALSH with the specific intent to defraud the BTCC or for obtaining the money or property of the BTCC by means of false or fraudulent pretenses, representations, or promises. Defendant WALSH's acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

11

s. By reason of Defendant WALSH's acts of mail and wire fraud, the BTCC was directly and foreseeably injured by the denial or termination of its Wilson-Pakula authority and by the detrimental impact upon its ability to raise funds for its political purposes. Correspondingly, Defendant WALSH's acts of mail and wire fraud increased the political power and control of Defendant WALSH and the SCCCP and, upon information and belief, resulted in more donations and contributions being made to the SCCCP at the expense of the BTCC.

22. At all relevant times, the enterprises alleged in paragraphs 19 and 20 (*supra*) were engaged in, and their activities affected, interstate commerce and foreign commerce.

23. All of the acts of racketeering described in paragraph 21 (*supra*) were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to undermine and weaken the BTCC by manipulating voting results, to coerce and intimidate Executive Committee members of the SCCCP and of the BTCC into disavowing their loyalties or participation in BTCC political matters, to deny the BTCC the right to screen its own non-party candidates for elected office and raise monies for the purposes of supporting local Conservative Party candidates within Brookhaven Town, to concentrate political power in the hands of Defendant WALSH and the SCCCP, to denying the BTC its lawful right to raise monies through fund raising in order to perform and promote its business of electing local public officials in the Town of Brookhaven, and to deprive the BTCC of financial contributions and donations and to divert those dollars to the SCCCP.

24. All of the acts of racketeering described in paragraph 21 (*supra*) were continuous so as to form a pattern of racketeering activity in that Defendant WALSH engaged in the predicate acts over a substantial period of time or in that Defendant WALSH's acts of racketeering are ongoing and threaten to continue indefinitely.

25. As a direct and proximate result of, and by reason of, the activities of Defendant WALSH, and his conduct in violation of 18 U.S.C. § 1962(c), the BTCC was injured in his business or property, within the meaning of 18 U.S.C. § 1964(c). Among other things, the BTCC was denied its Wilson-Pakula rights and has lost financial donations and contributions. The BTCC is, therefore, entitled to recover threefold the damages it has sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

### *COUNT TWO*

(State Claim for Breach of Contract)

26. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "25" as if fully set forth herein.

27. That pursuant to the rules and regulations of the Suffolk County Conservative Committee, the Suffolk County Conservative Executive Committee as agent and representative for the SCCCP is required to meet within thirty (30) days of a County Committee Organization meeting to grant or deny the Town Conservative Committees the right to issue local Wilson-Pakula Authority. Said bylaws constitute a contract between the Suffolk County Conservative Party and its County and Town Committees and membership. That there is an implied provision and requirement that said grant or denial to each town will not be based on an unlawful reason.

28. At all times hereinafter mentioned, the Suffolk County Conservative Executive Committee is the agent, representative and legal entity for the SCCC empowered to deny or grant Wilson-Pakula Authority.

29. That in October of 2014 Defendant WALSH noticed a meeting of the Suffolk County Conservative Executive Committee for the alleged purposes of granting or denying

13

"Wilson-Pakula" authority to individual towns.

30.   That prior thereto Defendant WALSH conspired through meetings, telephone calls, electronic mail and otherwise, with the other Suffolk County Executive Committee members, except for those committee members from Brookhaven Town, to deny the Brookhaven Town Conservative Committee its Wilson-Pakula Authority for unlawful reasons.

31.   That said unlawful reasons for denial included that the Brookhaven Town Conservatives Executive Committee's refusal to comply with Defendant WALSH'S dictatorial fiats and coercion including but not limited to not to raise any funds to support its local conservative candidates without same being approved and cleared solely by Defendant WALSH along with challenging Defendant WALSH for his refusal to have screenings for New York State Public office for Senate and Assembly.

33.   Defendant WALSH expressly and implicitly threatened that the result of failing to comply would be the denial of Plaintiff's Wilson-Pakula Authority.

33.   Defendant WALSH manipulated the voting process of the EXECUTIVE COMMITTEE OF THE SUFFOLK COUNTY COMMITTEE OF THE CONSERVATIVE PARTY OF NEW YORK STATE by mailing out voting proxies with his name pre-printed on each proxy so that he could vote all those non-attending executive committee member votes to deny Plaintiff its Wilson-Pakula Authority.

34.   The Defendant conspired with other Executive Committee members of the Suffolk County Conservative Committee to manipulate the democratic voting process and voted all of the proxies to deny Plaintiff its lawful Wilson-Pakula authority in retribution and in retaliation for Plaintiff's refusal to comport and comply with Defendant WALSH'S coercive and unlawful demands.

35. All of the other organized Town committees except the Town of Brookhaven were granted Wilson-Pakula Authority.

36. As a result of Defendant WALSH'S wrongdoing and breach of the terms and conditions of the rules and regulations of the Suffolk County Conservative Committee, the Suffolk County Conservative Party, thru its agent, the Suffolk County Conservative Executive Committee, Plaintiff has been wrongfully denied Wilson-Pakula Authority to nominate and authorize candidates who are not enrolled in the Conservative Party to run on the conservative line.

37. As a result Defendants' breach of the rules and regulations of the Suffolk County Conservative Committee, Plaintiff has been damaged in an amount to be determined at trial.

38. As a result Defendants' breach of the rules and regulations of the Suffolk County Conservative Committee Plaintiff is entitled to an Order of this Court overturning the vote taken by the Suffolk County Executive Committee as illegal, fraudulent and coerced, and directing Defendant SUFFOLK COUNTY COMMITTEE OF THE CONSERVATIVE PARTY OF NEW YORK STATE thru its agent the Suffolk County Conservative Executive Committee to issue local Wilson-Pakula Authority to the plaintiff.

39. Plaintiff has no adequate remedy at law available.

WHEREFORE, the BTCC demands that:

1. Judgment be entered in favor of the BTCC and against Defendant WALSH in the amount of the BTCC's actual damages to be proven at trial;

2. The BTCC be awarded prejudgment interest on the amount of damages and/or losses that the BTCC has sustained;

3. The BTCC be awarded treble damages pursuant to 18 U.S.C. § 1964(c);

4. The BTCC be awarded reasonable costs and attorneys' fees pursuant to 18 U.S.C. §

15

1964(c); and

      6.     The BTCC be awarded such other and further relief as the Court deems just and equitable.

Dated: October 16, 2014
       Huntington, New York

                                                                                    _____
THOMAS TERESKY, ESQ. [3241]
Attorney for Plaintiff
191 New York Avenue
Huntington, New York 11746
(631) 673-7555

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
BROOKHAVEN TOWN CONSERVANCY COMMITTEE,

                                        Plaintiff,

                -against-

EDWARD M. WALSH, JR. and SUFFOLK COUNTY COMMITTEE
OF THE CONSERVATIVE PARTY OF NEW YORK STATE,

                                        Defendants.
-------------------------------------------------------------X

LAW OFFICES OF
THOMAS H. HORSLEY, ESQ.
Attorneys for Plaintiff

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document(s) are not frivolous.

Dated: October 17, 2014

Signed: _____

Print Signer's Name: Thomas H. Horsley, Esq.