# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 14-CV-6097 (JFB)(ARL)

BROOKHAVEN TOWN CONSERVATIVE COMMITTEE,

Plaintiff,

VERSUS

EDWARD M. WALSH, JR. AND SUFFOLK COUNTY CONSERVATIVE COMMITTEE OF NEW YORK STATE,

Defendants.

**MEMORANDUM AND ORDER**
March 23, 2015

JOSEPH F. BIANCO, District Judge:

Plaintiff Brookhaven Town Conservative Committee ("plaintiff" or "BTCC") brings this action alleging that defendants Edward M. Walsh, Jr. ("Walsh") and the Suffolk County Conservative Committee of New York State ("SCCP") (1) violated 18 U.S.C. § 1962(c) by threatening plaintiff that its Wilson-Pakula authority would be revoked if it refused to abide by Walsh's directives and ultimately, revoking plaintiff's Wilson-Pakula authority; and (2) committed a state law breach of contract by breaching the rules and regulations of the Suffolk County Conservative Committee by denying plaintiff its Wilson-Pakula authority. For the reasons set forth herein, the Court grants defendants' motion to dismiss. In sum, because the decision to grant or withhold Wilson-Pakula authority to a town committee is vested in the County Executive Committee, plaintiff does not have a "right" to Wilson-Pakula authority and, thus, cannot claim a RICO injury based

upon the denial of that authority. The Court dismisses plaintiff's federal claim with prejudice and declines to exercise jurisdiction over plaintiff's state law claims. However, in an abundance of caution, the Court will allow plaintiff to amend its complaint to attempt to allege a RICO injury based upon an alleged diversion of funds.

I. BACKGROUND

A. Factual Background

The Court takes the following facts from the Amended Complaint. (Am. Compl.) The Court assumes these facts to be true for purposes of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

Plaintiff is the governing body of the Town of Brookhaven Conservative Committee. (Am. Compl. ¶ 1.) Plaintiff was organized to conduct "a local political committee for purposes of promoting,

screening, and nominating local candidates with conservative values within the Town of Brookhaven" and to raise money to support such candidates. (*Id.* at ¶ 11.)

Defendant Walsh has been the Chairman of the SCCP since 2006. (*Id.* ¶¶ 2, 22.) SCCP is the governing body of the Suffolk County Committee of the Conservative Party of New York State. (*Id.* at ¶ 3.) SCCP "endorses campaigns for and seeks the election of political leaders" in state and national elections. (*Id.* at ¶ 20.) After Walsh was elected as Chairman of the SCCP, he caused the political committees of the Suffolk County Conservative Chairman's Club ("SCCCC") and the Suffolk County Conservative Chairman's Committee H.K. ("SCCCHK") to be formed; both are controlled by Walsh. (*Id.* at ¶¶ 23-24.) Article 5 of SCCP's rules, regulations, and bylaws provides that the County Executive Committee members are empowered to authorize, designate, and nominate a candidate for public office and act as the representative and agent on behalf of the SCCP. (*Id.* at ¶ 15.)

Wilson-Pakula authorization is an authorization given by a political party to a candidate for public office in New York that allows a candidate not registered with that party to run as its candidate in a given election. (*Id.* at ¶ 13.) The Wilson-Pakula Act of 1947 is codified in New York State Election Law § 6-120, which forbids candidates from receiving the nomination of a political party unless they receive permission to enter the primary from party officials representing a majority of the vote in the jurisdiction. (*Id.*) Plaintiff alleges that Walsh has "explicitly and implicitly threatened that, unless the BTCC abided by his arbitrary decisions as to which candidates would appear on the ballot as Conservative Committee Candidates, cease from raising funds except with his explicit permission and cease from demanding screenings of all candidates for public office, he will and would terminate the BTCC's Wilson-Pakula authority and, correspondingly, disable the BTCC's ability to raise funds for its political purposes." (*Id.* at ¶ 16.)

Specifically, plaintiff alleges that, on or about February 9, 2010, Frank Profeta, Co-Chairman of BTCC's Executive Committee, told Walsh that plaintiff wished to "screen the County Legislative Candidates whose jurisdiction was solely in Brookhaven Town." (*Id.* at ¶ 47.) Plaintiff alleges that Walsh expressly threatened Profeta that, if he made such a request again, Walsh could "pull" plaintiff's Wilson-Pakula authority, and in response, plaintiff did not screen any County Legislative Candidates. (*Id.*) Plaintiff further alleges that, between February 9, 2010, and September 2014, Profeta attempted to schedule local Town Conservative Party fundraisers on BTCC's behalf, but upon learning of the fundraisers, Walsh demanded that the fundraisers be cleared with him and directed that certain fundraisers not be held so that they did not compete with SCCP's fundraisers; plaintiff complied with these demands. (*Id.* at ¶ 48.) In the spring of 2014, Profeta objected to Walsh's selection of his friend (Senft) to run for a vacant New York State Senatorial seat in the 3rd Senatorial District, which is comprised largely of Brookhaven. (*Id.* at ¶ 49.) Plaintiff alleges that, in response, Walsh told him that "despite there being no screening by the Executive Committee of the SCCP or its members, Senft was the candidate and everyone better get in line." (*Id.*) The SCCP did not screen other candidates or challenge the endorsement. (*Id.*) Around September 2014, Profeta again met with Walsh and complained that there were no screenings for all offices of the New York State Senate and Assembly. (Am. Compl. at ¶ 50.) Plaintiff alleges that, in response, Walsh told him that "other members of the Suffolk County

Executive Committee were upset with the Brookhaven Town Executive Committee" and that plaintiff could have a problem with its Wilson-Pakula authorization. (*Id.*) In response, plaintiff did not screen any candidates. (*Id.*)

Plaintiff further alleges that, on or about August 25, 2014, Walsh listened to a private, invitation-only telephone conference between members of BTCC's Executive Committee in order to gather information, which he "used to undermine and weaken the BTCC and its members through coercion and intimidation and to unlawfully strip the BTCC of its lawful right to select, screen, and fund raise for its candidates." (*Id.* at ¶ 60.)

On or about September 16, 2014, a re-organizational meeting was held for the SCCP at which Walsh was re-elected as Chairman. (*Id.* at ¶ 51.) Walsh then noticed a meeting to determine which towns in Suffolk County would be granted Wilson-Pakula authority. (*Id.*) Plaintiff alleges that, prior to the meeting, Walsh spoke to most members of the Executive Committee, except those from Brookhaven Town, and directed them to vote to deny plaintiff its Wilson-Pakula authority. (*Id.*) Plaintiff further alleges that, on or about September 10, 2014, Walsh sent proxies pre-printed with his name on them so that he could use the votes to deny plaintiff's Wilson-Pakula authority. (*Id.* at ¶ 59.)

On or about October 8, 2014, the SCCP Executive Committee denied plaintiff its Wilson-Pakula authority. (*Id.* at ¶ 52.) Except for Brookhaven, all other organized town committees were granted Wilson-Pakula authority. (*Id.* at ¶ 89.) Plaintiff alleges that the loss of its Wilson-Pakula authority will both hinder its ability to raise funds and benefit defendants because anyone wishing to donate to the Conservative Party in order to benefit candidates in Brookhaven Township will be compelled to donate to SCCP, which has Wilson-Pakula authority, rather than plaintiff, which lacks Wilson-Pakula authority. (*Id.* at ¶ 17.)

During a Suffolk County Conservative Party Executive Committee meeting around 2009, Walsh placed a resolution on the record that granted him a $65,000 annual stipend; the resolution passed by a unanimous vote. (*Id.* at ¶ 25.) At least twice a year since becoming Chairman, Walsh has sent fundraising announcements to members of all town committees and other registered conservatives. (*Id.* at ¶¶ 27, 66-70.) Walsh uses the SCCP's official seal and party mailing list to advertise and fundraise. (*Id.* at ¶ 28.) Plaintiff alleges that invitations for these fundraisers state that checks should be made out to the Suffolk County Conservative Chairman's Club, which is a committee that was never authorized by the SCCP's Executive Committee members or by any bylaw, rule, or regulation of the SCCP. (*Id.* at ¶¶ 66-70.) Plaintiff alleges that the money received through these fundraisers are deposited into the bank accounts of either the SCCCHK or SCCCC, which are under Walsh's control, and the SCCP stipend is paid through these contributions. (*Id.* at ¶¶ 34-35.) Plaintiff's members have contributed funds to these fundraisers. (*Id.* at ¶ 32.) Plaintiff alleges that Walsh receives other funds personally or otherwise for his benefit through SCCCHK and SCCCC that were never authorized by the Executive Committee, such as $1,117.00 per month for his car, gas reimbursement, insurance reimbursement, and miscellaneous office expenses. (*Id.* at ¶¶ 36-37, 71.) Plaintiff alleges that, during 2013 and 2014, the majority of SCCCHK and SCCCC's expenditures were for Walsh's personal benefit; specifically, SCCCHK's July 2014 disclosure to the New York State Board of Elections showed that of the $44,950.13 in total expenditures, $41,711.87 was used for Walsh's personal benefit. (*Id.* at ¶ 72.)

3

B. Procedural Background

Plaintiff filed its Complaint on October 17, 2014 and its Amended Complaint on November 24, 2014. Defendants moved to dismiss on March 13, 2015. Plaintiff opposed on April 27, 2015. Defendants replied on May 11, 2015. The Court held oral argument on July 30, 2015. The Court has fully considered the parties' submissions.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their

contents and they were integral to plaintiffs' claim.").

III. DISCUSSION

Defendants move to dismiss, arguing that (1) the Amended Complaint raises only non-justiciable political questions; (2) plaintiff lacks standing; (3) plaintiff fails to state a claim for a civil RICO violation; and (4) plaintiff fails to state a claim for breach of contract. For the reasons set forth below, the Court concludes, that plaintiff fails to state a claim for a civil RICO violation and, thus, dismisses plaintiff's amended complaint. However, in an abundance of caution, the court will give plaintiff an opportunity to replead.

A. RICO

Defendants argue that plaintiff's Amended Complaint fails to allege any of the necessary elements of a RICO claim. As a threshold matter, defendants argue that plaintiff's RICO claim fails because plaintiff has not alleged a cognizable injury. For the reasons explained in detail below, the Court agrees that plaintiff fails to allege a cognizable injury under RICO and, thus, concludes that its RICO claim must be dismissed.

1. Legal Standard

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "When § 1962 is violated, in addition to criminal penalties, the RICO statutes also authorize civil lawsuits, which, if successful, can entitle a plaintiff to treble damages, costs, and attorney's fees." *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010) (citing 18 U.S.C. § 1964(c)). Specifically, RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c).

"To establish a civil RICO claim [under 18 U.S.C. § 1964(c)], a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'" *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)). "The pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Id.* (citing 18 U.S.C. § 1961(5)). Racketeering activity is defined as "any act which is indictable" under specified provisions of Title 18, including mail fraud, wire fraud, extortion, and bank fraud. 18 U.S.C. § 1961(1)(B).

"Standing" under RICO, for purposes of a motion to dismiss, is not a jurisdictional concept, but instead is analyzed as a merits issue under Federal Rule of Civil Procedure 12(b)(6). *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 116-17, 129-30 (2d Cir. 2003) ("We hold that lack of RICO standing does not divest the district court of jurisdiction over the action, because RICO standing, unlike other standing doctrines, is sufficiently intertwined with the merits of the RICO claim that such a rule would turn the underlying merits questions into jurisdictional issues. . . . In sum, despite describing the proximate causation requirement as 'RICO standing,' such standing is not jurisdictional in nature under Fed. R. Civ. P. 12(b)(1), but is rather an element of the merits addressed under a Fed. R. Civ. P. 12(b)(6) motion for failure to state

5

a claim."). The Second Circuit has described RICO standing as "a more rigorous matter than standing under Article III." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).

Courts have described civil RICO as "'an unusually potent weapon—the litigation equivalent of a thermonuclear device.'" *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)), *aff'd*, 113 F.3d 1229 (2d Cir. 1997). "Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Id.* (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)); *see also DLJ Mortg. Capital*, 726 F. Supp. 2d at 236. Indeed, although civil RICO may be a "potent weapon," plaintiffs wielding RICO almost always miss the mark. *See Gross v. Waywell*, 628 F. Supp. 2d 475, 479-83 (S.D.N.Y. 2009) (conducting survey of 145 civil RICO cases filed in the Southern District of New York from 2004 through 2007, and finding that all thirty-six cases resolved on the merits resulted in judgments against the plaintiffs, mostly at the motion to dismiss stage). Accordingly, courts have expressed skepticism toward civil RICO claims. *See, e.g.*, *DLJ Mortg. Capital*, 726 F. Supp. 2d at 236 ("[P]laintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations.").

Although civil RICO presents many hurdles for a plaintiff to overcome, the Supreme Court has also "made clear that it would not interpret civil RICO narrowly." *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 139 n.6 (2d Cir. 2001) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)). In *Sedima*, the Supreme Court rejected an interpretation of civil RICO that would have confined its application to "mobsters and organized criminals." 473 U.S. at 499. Instead, the Court held: "The fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Id.* (internal citation and quotation marks omitted); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 479 (2006) (Breyer, J., concurring in part and dissenting in part) ("RICO essentially seeks to prevent organized criminals from taking over or operating legitimate businesses. Its language, however, extends its scope well beyond those central purposes."). Thus, a court should not dismiss a civil RICO claim if the complaint adequately alleges all elements of such a claim, even if the alleged conduct is not a quintessential RICO activity.

2. Application

Here, plaintiff has attempted to allege RICO violations with racketeering, mail fraud, and wire fraud as the alleged predicate acts underlying these violations. (*See* Am. Compl. ¶ 41.) As a result of defendants' alleged RICO violations, plaintiff claims to have suffered injury through the loss of its Wilson-Pakula authorization.[1] For the

---

[1] Plaintiff makes reference to sustaining an injury through "the elimination of its ability to successfully raise funds for candidates or for purposes of the Brookhaven Town Conservative Committee" and "its restrictive ability to hold fundraisers." (Pl.'s Opp. at 8.) However, the Amended Complaint and plaintiff's opposition make clear that such "injuries" were tied to threats regarding the potential loss of its Wilson-Pakula authorization. (*See, e.g.*, Pl.'s Opp. at 10 ("Plaintiff's allegation herein is that they have suffered the loss of the Wilson Pakula and that has injured them both in their business and with that of a Town Committee and property by virtue of affecting their ability to fund raise.").) Accordingly, the Court considers any such injuries as a part of the injury alleged in the loss of the Wilson-Pakula authorization.

6

reasons that follow, the Court concludes that this alleged injury fails to provide plaintiff with statutory standing under RICO.

A plaintiff has standing to bring a RICO claim only if he has been injured in his business or property by the conduct constituting the RICO violation and only when his actual loss is clear and definite. *See Denney*, 443 F.3d at 266; *see also Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 231 (E.D.N.Y. 2014) (same); *Westchester Cty. Indep. Party v. Astorino*, No. 13-CV-7737 (KMK), 2015 WL 5883718, at *17 (S.D.N.Y. Oct. 8, 2015) (collecting cases).

Here, plaintiff lacks standing to bring a RICO claim because it has alleged no injury to its business or property. Although plaintiff claims it was injured through the loss of its Wilson-Pakula authority, such a claim ignores the simple fact that plaintiff had no right to the Wilson-Pakula authority in the first place. *Cf. Cty. of Hudson v. Janiszewski*, 520 F. Supp. 2d 631, 653 (D.N.J. 2007), *as amended* (Nov. 5, 2007), *aff'd*, 351 F. App'x 662 (3d Cir. 2009) (finding plaintiff failed to allege RICO injury based on county's discretionary decision not to renew public contract with him).

Under New York Election Law, certificates of authorization are required in order that individuals who are not party members may appear on the party's ballot. N.Y. Elec. Law § 6-120; *see also Master v. Pohanka*, 10 N.Y.3d 620, 624-25 (N.Y. 2008); *Francisco v. Borden*, 545 N.Y.S.2d 401, 402 (N.Y. App. Div. 1989). These certificates of authorization must be issued by "members of the party committee representing the political subdivision of the office for which a designation or nomination is to be made, unless the rules of the party provide for another committee." N.Y. Elec. Law § 6-120(3). The Suffolk County Conservative Committee's Rules and Regulations provide that "[t]he County Executive Committee is empowered to authorize the designation, nomination, or substitution of a person as a candidate for any Public Office to be voted for solely within Suffolk County who is not enrolled as a member of the Conservative Party, EXCEPT as *may* be provided for within this Article regarding the Town elections for Public Office." (Ex. B to Hill Decl. at Art. V § 1 (emphasis added)). The Rules elaborate that the "County Executive Committee shall hold an Official Organization Meeting within thirty (30) days of the County Committee Organizational Meeting for the purpose of voting on conferring authority to Town Committees and/or Town Executive Committees defined in these Rules and Regulations empowering said towns to authorize the designation, nomination, or substitution of a person as a candidate for any Town public office." (*Id.* at Art. V § 3.) The Rules further provide that "[a]t any time, the County Executive Committee may, by majority vote, revoke said Wilson Pakula authority from any Town Committee" and that the County Executive Committee "shall retain full authority to authorize . . . candidates for Public Office who are not enrolled members of the Conservative Party for . . . any town-wide elected positions in townships where local authorization authority has [ ] not been conferred pursuant to this section." (*Id.*) Accordingly, the Suffolk County Conservative Committee's Rules and Regulations clearly provide that the discretion to grant Wilson-Pakula authority to individual town committees rests with the County Executive Committee. Because the Committee's Rules and Regulations "do not conflict with Election Law § 6-120(3), they must be respected by

the courts and given effect." *Pohanka*, 10 N.Y.3d at 625-26.

Thus, because the decision whether to grant or withhold Wilson-Pakula authority to a town committee is a discretionary determination permissibly vested in the County Executive Committee, plaintiff does not have a "right" to Wilson-Pakula authority. *See Miller v. Meisser*, 22 N.Y.2d 318, 320 (N.Y. 1968) (holding that county committee "unquestionably retained unto itself the power to designate candidates" within the district when it chose not to delegate its authority to a "lesser committee" within the district). As such, plaintiff has failed to adequately allege that it suffered an injury when it was denied Wilson-Pakula authorization and, thus, lacks standing to bring a RICO claim.[2] Therefore, plaintiff's claim under 18 U.S.C. § 1964(c) is dismissed.

## B. Breach of Contract

Plaintiff also alleges breach of contract under New York law, claiming that defendants breached the rules and regulations of the Suffolk County Conservative Committee when it denied plaintiff Wilson-Pakula authority. However, having determined that plaintiff's federal claim does not survive defendants' motion to dismiss, the Court concludes that retaining jurisdiction over any state law claim is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claim because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99-CV-3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and

---

[2] To the extent that plaintiff claims that it suffered injury based on a loss of diverted funds, the only reference in the Amended Complaint to such an allegation is that "plaintiff, BTCC, reasonably believed and was fraudulently induced to believe by the defendant Walsh, that the funds donated by the BTCC, would be used for purposes of promoting conservative candidates in the Town of Brookhaven and throughout Suffolk County when they were used instead for his personal gain." (Am. Compl. ¶ 33.)

Such an allegation is unclear and conclusory. Further, at oral argument, when the Court asked plaintiff's counsel if there were any allegations in the Amended Complaint that plaintiff wrote a check on a certain date, from which funds were diverted, plaintiff's counsel admitted that the Amended Complaint did not include such specific allegations. If plaintiff is claiming injury based on a loss of diverted funds, plaintiff must file a second amended complaint that more fully sets forth such a theory of RICO injury.

allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claim against defendants given the absence of any federal claim against them that survive the motion to dismiss, and dismisses plaintiff's state law claim without prejudice.

### IV. LEAVE TO AMEND

Having concluded that plaintiff has failed to state a plausible federal claim, the Court has considered whether it should be afforded an opportunity to amend its complaint for a second time. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002); *see Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (finding that leave to amend may be denied based upon the "futility of amendment"). As to futility, "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.,* if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle [it] to relief." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

Although the amended complaint lacks sufficient allegations to articulate a plausible civil RICO claim, plaintiff may be able to cure these defects with additional factual allegations with respect to the alleged diversion of its funds. As the Court has discussed, given that it may be possible to allege a RICO injury based upon an alleged diversion of plaintiff's funds, the Court will provide plaintiff with an opportunity, if it wishes, to replead a non-conclusory RICO claim under that theory. Although it is entirely unclear that plaintiff could plausibly allege all of the elements of a civil RICO claim under this theory, the Court, in an abundance of caution, will give plaintiff the opportunity to attempt to do so, if it wishes.

### V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss the federal claim. Given the dismissal of plaintiff's federal claim, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claim for breach of contract and, thus, dismisses this claim without prejudice. Any amended complaint must be filed within 30 days of this Memorandum and Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 23, 2015
Central Islip, NY

\*\*\*

Plaintiff is represented by Thomas G. Teresky, 191 New York Avenue, Huntington, New York 11743. Defendants are represented by Vincent J. Messina, Jr., and Timothy F. Hill of Sinnreich, Kosakoff & Messina LLP, 267 Carleton Avenue, Suite 301, Central Islip, New York 11722.